OPINION OF THE COURT
Steven M. Statsinger, J.
Defendant, charged with obstructing governmental administration in the second degree (Penal Law § 195.05) and harassment in the second degree (Penal Law § 240.26 [1]), moves to dismiss the information in furtherance of justice, pursuant to CPL 170.30 and 170.40 (1) and People v Clayton (41 AD2d 204 [2d Dept 1973]). For the reasons that follow, the court grants the motion to dismiss.[1]
I. Factual Background
A. The Allegations
According to the information, at 10:50 p.m. on April 11, 2013, Police Officer Anthony Giambra responded to a 911 call at 30 West 83rd Street, in Manhattan. In the lobby of that building Officer Giambra encountered Karl Peltomaa, “an emotionally disturbed person.” Peltomaa said that he was willing to be placed in handcuffs “for his protection,” but fought back when Giambra tried to cuff him, ultimately requiring the assistance of a second officer.
Defendant then grabbed Giambra’s arm and shoulder in an effort to pull his arm away from Peltomaa, and yelled for Giambra to release Peltomaa. This behavior lasted “thirty to sixty seconds.” When Giambra told the defendant that she would be arrested if she did not stop, she replied, “Go ahead.”
B. Legal Proceedings
On April 12, 2013, defendant was arraigned on an information charging her with obstructing governmental administration in the second degree (Penal Law § 195.05) and harassment in the second degree (Penal Law § 240.26 [1]). The People served statement notice that defendant said to Officer Giambra, in substance, “He had heart surgery—get off him.”
*386 The People’s offer at arraignment was a plea to disorderly-conduct (Penal Law § 240.20) and a sentence of time served. Defendant declined the offer and was released on her own recognizance.
At subsequent calendar calls on May 31, 2013, September 4, 2013, and October 16, 2013, the People offered defendant an adjournment in contemplation of dismissal (ACD). Defendant declined the offer on each of those occasions.
Defendant filed the instant motion to dismiss on October 16, 2013. The People filed opposition papers on December 5, 2013, and defendant filed a reply on December 11, 2013.
C. Defendant’s Motion
Defendant’s motion to dismiss, which is supported by affidavits from defendant and from Karl Peltomaa, her husband, provides additional information about the facts leading up to defendant’s arrest.
Defendant, who is 59 years old, and Peltomaa, who is 50, are both academics. Defendant has a Master’s degree and a Ph.D. from Yale and is currently employed as a professor of anthropology at the City University of New York. This was her first arrest. Peltomaa teaches physics and mathematics. They live together at 30 West 83rd Street with their dog.
In approximately 2008, the couple learned that Peltomaa suffers from Marfan syndrome, a congenital disorder that often results in heart malfunction, particularly affecting the valves and the aorta. Both Peltomaa’s father, in 1994, and his sister, in 2004, died of an aortic aneurysm. In March of 2013, Peltomaa himself learned that he suffered from an aortic aneurysm that required surgical intervention. He had the surgery at Roosevelt Hospital on April 5, 2013, and was released on April 10, 2013.
The next evening, April 11, 2013, after defendant and Peltomaa had walked their dog, Peltomaa drank some wine and began feeling very anxious. Defendant, concerned that her husband was suffering a postsurgical complication, immediately called 911. After a short conversation, she hung up to attend to her husband, then immediately called back. According to a transcript of that call, defendant told the 911 operator that her husband had been “discharged to [sic] the hospital yesterday for heart surgery. He’s on a lot of medication. And he’s freaking out.” Defendant explained that Peltomaa did not have a “psych history,” just a “medical history,” and she requested an ambulance.
*387 Police, EMS and the fire department arrived a short time later. As defendant spoke with Officer Giambra at her door— their apartment is on the ground floor—her dog escaped. Defendant ran after the dog, which was captured on the sidewalk by one of the responders. Defendant then returned to her apartment door.
When she got there, it appeared to her that Officer Giambra, whom she describes as at least five inches taller and some 80 pounds heavier than Peltomaa, had placed Peltomaa face forward, with his surgical wound pressing against the wall of the hallway, while officers tried to handcuff him from behind. She told the officers that Peltomaa had just had open-heart surgery and that they should not push his chest against the wall.
As she continued to explain Peltomaa’s medical condition, defendant reached out and touched the officer’s shoulder in an effort to protect her husband, after which Officer Giambra placed her under arrest. Defendant saw the officers push Peltomaa against the wall forcefully and throw him face-down to the floor, opening a cut in his chin. Peltomaa’s post-arrest medical records confirm that he suffered a “chin laceration,” and received stitches.
On his part, Peltomaa describes a confusing and frightening encounter with Officer Giambra, in which the officer insisted on handcuffing him even though all Peltomaa wanted was medical care. Peltomaa confirms that the police pressed his chest wound against the wall, and also that he heard his wife tell the police to be gentle with him because he had just had open-heart surgery. The police forced him onto the floor, chest-down, where he cut his chin and dislocated a thumb. He was hospitalized for two days while these injuries were treated, then released.
D. The People’s Response
The People’s opposition to the motion to dismiss offers no additional facts, other than to argue for the first time that defendant “attacked” Officer Giambra. The People argue that defendant’s “attack of the arresting officer escalated a dangerous situation increasing the risk to herself, her husband, the first responders, and the police officers on scene. It also interfered with the officer’s ability to assist the first responders and delayed the process significantly.” They conclude that “[allowing this case to proceed would not be a miscarriage of justice.”
II. Discussion
Defendant’s motion describes facts so extreme and unusual that this case can truly be deemed sui generis. She intervened *388 in what she perceived to be an unnecessarily forceful effort by a police officer to subdue her husband, who had had open-heart surgery only days before, and had just been released from the hospital. It was defendant’s own call to 911 that brought the police to the scene, as she believed that her husband was suffering a postsurgical complication that required medical intervention, and, although she placed her hands on the police officer, she did not hurt him in any way. Defendant’s husband was injured as a result of his encounter with the police and ended up back in the hospital. On these facts, a dismissal in furtherance of justice is warranted.
Pursuant to CPL 170.30 (1) (g), a court has the power to dismiss an accusatory instrument “in furtherance of justice,” after considering the factors set out in CPL 170.40 (1). (See also Clayton, 41 AD2d at 206-208.) The power to dismiss an accusatory instrument in furtherance of justice should be used “sparingly and only in that rare and unusual case where it cries out for fundamental justice beyond the confines of conventional considerations.” (People v Harmon, 181 AD2d 34, 36 [1st Dept 1992] [citations and internal quotation marks omitted].) A Clayton motion should be granted only where a defendant has demonstrated by a preponderance of the credible evidence that a compelling reason exists to warrant dismissal in the interest of justice; if the defendant fails to meet this burden, the court may summarily deny the motion. (People v Schlessel, 104 AD2d 501, 502 [2d Dept 1984].) The court must consider individually and collectively each of the factors listed in CPL 170.40 (1)[2] and must, where dismissal is granted, place its reasons on the record. (CPL 170.40 [2]; People v Berrus, 1 NY3d 535, 536 [2003].)
The court has considered all of the section 170.40 (1) factors individually and in combination and, for the reasons that follow, concludes that defendant has satisfied her burden of establishing that dismissal is warranted.
*389 First, there are extremely unusual and sympathetic background facts leading up to the offense. Defendant’s husband was seriously ill, suffering from the same genetic disorder that had resulted in the death of his father and sister. He learned approximately one month before this incident that he needed to have heart surgery, had the surgery less than one week before the incident, and had only been home from the hospital for one day. It was defendant herself who called 911 on the night of April 11, 2013, and she did so because she believed that her husband was in the throes of a. serious postsurgical complication and needed medical attention. An unusually sympathetic “back story” like this one can, in the right case, contribute to the basis for granting a Clayton motion. (See People v Haugh, 26 Misc 3d 1029 [Henrietta Just Ct 2009] [dismissing DWI case where offense was the culmination of a series of sympathetic and highly unusual personal circumstances].)
Second, the facts of the case are extremely unusual. Preliminarily, the court disagrees with the People’s characterization of defendant’s conduct as an “attack” on Officer Giambra. The information alleges only that defendant grabbed the officer’s arm and shoulder in an effort to secure her husband’s release; she is charged with subjecting the officer to an unwanted and inappropriate physical contact, but not assault. The court also rejects the People’s assertion that defendant’s behavior “significantly” delayed the responders’ actions or greatly amplified the dangerousness of the situation. The information alleges that defendant interfered with Officer Giambra for less than one minute, which is not a “significant” delay. Moreover, as revealed by the People’s statement notice, defendant was at the same time warning the responders that Peltomaa had recently had heart surgery. Rather than interfering with the responders’ task, her providing them with accurate medical information about Peltomaa could have assisted them in managing the situation more effectively.
Defendant’s highly charged emotional state is also relevant to this analysis. While the court makes no finding as to whether Officer Giambra used excessive or inappropriate force against Peltomaa, it is abundantly clear that defendant actually believed that this was true, particularly given the vast difference in the two men’s size. It is equally clear that defendant’s belief, under all of the circumstances, was reasonable. She was already very upset when the police arrived, became more upset when her dog escaped, then returned from the chase to see the officer push *390 her husband against a wall, seemingly risking the reopening of his recent surgical wound. On these exceptional facts, it is hardly surprising that defendant took steps to try to protect her husband.
In many respects, this case resembles People v Federman (19 Misc 3d 478, 480-481 [Crim Ct, NY County 2008]), where the court granted a Clayton motion after the defendant demonstrated similarly atypical motives. The defendant was the principal of a school, and had asked a police officer who had come to arrest one of his students to remove the student through a back entrance. (Id.) The defendant intervened in the arrest only after the officer refused, and did so in order to avoid the student suffering the embarrassment of being removed from the school in handcuffs through the front entrance in full view of hundreds of other students. (Id.)
Next, the court also takes into account defendant’s exemplary personal history. She was 59 years old when she sustained this, her first arrest, and has established an impeccable personal and professional pedigree. While this alone would not be a sufficient basis for granting Clayton relief, it is something that a court should consider in combination with the other statutory factors. (See e.g. People v Hernandez, 111 AD3d 513 [1st Dept 2013] [affirming grant of Clayton motion based on a combination of the facts of case and defendant’s lifetime of good behavior].)
Finally, the People have been offering the defendant an ACD consistently since May 31, 2013, which was more than seven months ago. The court notes that an ACD is “an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice” after a period of no more than six months. (CPL 170.55 [2] [emphasis added].) Since a dismissal “in furtherance of justice” under sections 170.30 (1) (g) and 170.40 (1) is the very relief the defendant seeks, and since for more than six months the People have been offering a resolution that would result in exactly that, the People will not be prejudiced by the granting of the instant Clayton motion.
Accordingly, the court grants defendant’s motion to dismiss in furtherance of justice.
III. Conclusion
For the foregoing reasons, the court grants defendant’s motion to dismiss in the furtherance of justice.

. In reaching this decision, the court has considered, in addition to the relevant statutes and case law, defendant’s motion, the People’s response and defendant’s reply.

. Those factors are: (a) the seriousness and circumstances of the offense; (b) the extent of harm caused by the offense; (c) the evidence of guilt, whether admissible or inadmissible at trial; (d) the history, character and condition of the defendant; (e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant; (f) the purpose and effect of imposing upon the defendant a sentence authorized for the offense; (g) the impact of a dismissal on the safety or welfare of the community; (h) the impact of a dismissal upon the confidence of the public in the criminal justice system; (i) where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion; (j) any other relevant fact indicating that a judgment of conviction would serve no useful purpose.